UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

PARRIS DEZUSE,

|  |  |
|---|---|
| Plaintiff, | **COMPLAINT** |
| -against- | 08 CV 4234 (DAB) (RLE) |
| THE CITY OF NEW YORK; COMMISSIONER MARTIN F. HORN; WARDEN JOHN DOE # 1; SUPERVISOR C.O. JOHN DOE # 1; C.O. DION; C.O. WALKER; and C.O. MASSON; the individual defendants sued individually and in their official capacities, | ECF Case<br><br>Jury Trial Demanded |
| Defendants. |  |

------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. §§ 1983 and 1985(3), and the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and the laws of the State of New York. The claims arise from an incident(s), which occurred on or about April 13, 2007. During the incidents, the City of New York and members New York City Department of Correction ("DOC") subjected plaintiff to, among other things, excessive, unreasonable and unnecessary force, failure to protect, failure to provide medical care, conversion of chattels, retaliation for free speech, fabricated evidence, assault and battery, conspiracy, intentional and negligent infliction of emotional distress, harassment, gross negligence, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom. Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorneys' fees, and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1985(3), and the

First, Fifth, Eighth, and Fourteenth, and Fourteenth Amendments to the United States

Constitution.  Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§

1331 and 1343.

3.      Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28

U.S.C. § 1367 to hear and decide claims arising under state law.  A notice of claim was duly

filed on the City of New York within 90 days of the incidents at issue, more than 30 days have

elapsed since such filing and the City has refused to settle plaintiff's claims.  Moreover, this

action has been filed within one year and 90 days of the incidents that are the basis of this claim.

4.      Venue is proper in the Southern District of New York pursuant to 28

U.S.C. § 1391 because some of the acts in question occurred in Bronx County, and the City of

New York is subject to personal jurisdiction in the Southern District of New York.

## PARTIES

5.      Plaintiff Parris Desuze is a resident of the state of New York, Kings

County.

6.      Defendant City of New York is a municipal corporation organized under

the laws of the State of New York, which violated plaintiff's rights as described herein.

7.      Defendant Martin F. Horn is the Commissioner of the DOC who violated

plaintiff's rights as described herein.

8.      Defendant Warden John Doe # 1 is a New York City Correction Warden

employed at the Robert N. Davoren Complex ("RNDC") (formerly known as ARDC), located in

East Elmhurst, New York who violated plaintiff's rights as described herein.

2

9.     Defendant Supervisor C.O. John Doe # 1 is a New York City Correction Supervisor employed at the RNDC, located in East Elmhurst, New York who violated plaintiff's rights as described herein.

10.     Defendant C.O. Dion is a New York City Correction Officer employed at the RNDC, located in East Elmhurst, New York who violated plaintiff's rights as described herein.

11.     Defendant C.O. Walker is a New York City Correction Officer employed at the RNDC, located in East Elmhurst, New York who violated plaintiff's rights as described herein.

12.     Defendant C.O. Masson is a New York City Correction Officer employed at the RNDC, located in East Elmhurst, New York who violated plaintiff's rights as described herein.

13.     The individual defendants are sued in their individual and official capacities.

### STATEMENT OF FACTS

14.     The following is a summary set forth for the purpose of demonstrating, and providing notice of plaintiff's claims against the defendants.  Plaintiff has not set forth each and every fact concerning the incident(s) described below.

15.     On April 13, 2007, at approximately 12:30 p.m. to 1:30 p.m., at RNDC - C-74 Building, East Elmhurst, New York, correction officers and supervisors, including upon information and belief, defendant Warden John Doe # 1, Supervisor C.O. John Doe # 1, C.O. Dion, C.O. Walker, and C.O. Mason, at times acting in concert and at times acting independently, committed the following illegal acts against plaintiff.

3

16.    Prior to and on April 13, 2007, at RNDC - C-74 Building, East Elmhurst, New York, defendants Warden John Doe # 1, Supervisor C.O. John Doe # 1, C.O. Dion, C.O. Walker, and C.O. Mason knew that plaintiff was incarcerated under conditions posing a substantial risk of serious harm to him.

17.    Prior to and on April 13, 2007, at RNDC - C-74 Building, East Elmhurst, New York, defendants Warden John Doe # 1, Supervisor C.O. John Doe # 1, C.O. Dion, C.O. Walker, and C.O. Mason acted with deliberate indifference to the safety of plaintiff.

18.    Prior to and on April 13, 2007, at RNDC - C-74 Building, East Elmhurst, New York, defendants Warden John Doe # 1, Supervisor C.O. John Doe # 1, C.O. Dion, C.O. Walker, and C.O. Mason acted with deliberate indifference because they were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed towards plaintiff, and the defendants drew this inference.

19.    Prior to and on April 13, 2007, at RNDC - C-74 Building, East Elmhurst, New York, defendants Warden John Doe # 1, Supervisor C.O. John Doe # 1, C.O. Dion, C.O. Walker, and C.O. Mason were aware that there existed a pervasive pattern of continued harassment, theft, extortion and assaults against other detainees by gangs of detainees.

20.    At times, prior to and on April 13, 2007, the above-mentioned gang harassment took the form of verbal threats towards other detainees, in the presence of, under the observation, with the approval, and with the assistance of the defendant officers.

21.    At times, prior to and on April 13, 2007, the above-mentioned gang thefts took the form of the gang members entering cells and/or bunk locations of other detainees in the presence of, under the observation, with the approval, and with the assistance of the defendant officers.

4

22.     At times, prior to and on April 13, 2007, the above-mentioned gang extortion took the form of forcing other detainees to surrender, among other things, their commissary, property, or phone access, to the gang members under the threat of violence by these gang members, in the presence of, under the observation, with the approval, and with the assistance of the defendant officers.

23.     At times, prior to and on April 13, 2007, the above-mentioned gang assaults took the form of physically attacking detainees (who failed to surrender their commissary, property, or phone access to the gang members, asked for their stolen property to be returned, or complained about the gang's abuses) in the presence of, under the observation, with the approval, and with the assistance of the defendant officers.

24.     Prior to and on April 13, 2007, defendants C.O. Dion, C.O. Walker, and C.O. Mason conspired with the gang that controlled RNDC - C-74 Building, with the purpose of having the gang run the cell area on behalf of the defendant officers.

25.     At times, prior to and on April 13, 2007, defendants C.O. Walker fraternized with gang members at RNDC - C-74, regularly smoking cigarettes with them. Cigarettes are a form of currency among detainees within Rikers Island's detention centers.

26.     At times, prior to and on April 13, 2007, upon information and belief, defendants C.O. Dion, C.O. Walker, and C.O. Mason protected the gang members at RNDC - C-74 from departmental investigations, disciplinary measures, and apprehension for committing crimes.

27.     Specifically, on April 12, 2007, plaintiff newly arrived at RNDC - C-74 Building, East Elmhurst, New York.

28.    Thereafter, on April 13, 2007, at approximately 12:30 p.m. to 1:30 p.m., at RNDC - C-74 Building, East Elmhurst, New York, while plaintiff was in the shower, gang members entered his cell, in the presence of, under the observation, with the approval, and with the assistance of defendants C.O. Dion and C.O. Masson, and stole his radio.

29.    When plaintiff returned from his shower, he saw that his radio was missing, and approached the gang members, who numbered about six individuals, in the Day Room of at RNDC - C-74 Building to ask them to return his radio in the presence of, and under the observation of C.O. Dion.

30.    Defendant C.O. Dion could hear their conversation, and was approximately 15 to 20 feet away from plaintiff and the gang members.

31.    The gang members laughed and denied taking the radio, and plaintiff walked away from them.

32.    As plaintiff walked, a gang member named "Benjamin" punched plaintiff in the face, then the other gang members joined in the attack.  Plaintiff collapsed to the ground, and the gang savagely punched and kicked him about the head and body for approximately two minutes while defendant C.O. Dion watched the attack from 15 to 20 feet away.

33.    Plaintiff was helpless during the attack.

34.    Defendant C.O. Dion did not try to prevent the attack, stop the attack, intervene and protect plaintiff, use his radio, or pull his emergency alert transmitter to summon assistance.

35.    Defendant C.O. Dion failed to protect plaintiff although he had duty as a correction officer to protect plaintiff from being physically assaulted by other detainees.

36. When the gang members finished their attack, plaintiff had serious visible physical injuries, including bruises and contusions, a bloody nose, and multiple fractures to his jaw.

37. Defendant C.O. Dion did not apprehend any of the gang members who attacked the plaintiff.

38. Defendant C.O. Dion did not charge any of the gang members who attacked the plaintiff with a disciplinary infraction.

39. Defendant C.O. Dion did even help plaintiff off the ground.

40. After the beating, plaintiff struggled to his feet and went back to his cell.

41. While plaintiff was in his cell, defendant C.O. Dion came to him, and told him to "hold it down" and to not complain about the incident.

42. While plaintiff was in his cell, in the presence of, under the observation, with the approval, and with the assistance of defendants C.O. Dion and C.O. Masson, the gang members told plaintiff not to "snitch" to anyone.

43. Defendants C.O. Dion and C.O. Masson would not allow plaintiff to leave the cell area and seek medical care despite his serious visible physical injuries.

44. Defendants C.O. Dion and C.O. Masson deliberately failed to provide or call for medical assistance for plaintiff, despite his serious visible physical injuries.

45. However, plaintiff's face continued to swell, and it became clear that the injuries were so significant that defendants C.O. Dion and C.O. Masson could not hide plaintiff's injuries, so defendants C.O. Dion and C.O. Masson conspired, hatching a plan to cover up their misconduct.

46.    Defendants C.O. Dion and C.O. Masson ordered plaintiff to the "bubble" (officers station) and told him, under a thinly veiled threat of further violence by the gang members, and in exchange for being provided medical care, that he had to make a false report that he had injured himself while dancing on a table.

47.    Thereafter, defendants C.O. Dion and C.O. Masson allowed plaintiff to seek medical treatment.

48.    Later, a Correction Captain and Correction Officer, who had learned of defendants' cover story, asked plaintiff to tell them what actually happened in the Day Room, and plaintiff did.

49.    Eventually, plaintiff was operated on and treated at Bellevue Hospital, New York, New York, where he was interviewed by New York City Police Officers about the incident.

50.    The aforesaid events are not an isolated incident.  Defendants Commissioner Martin F. Horn, Warden John Doe # 1, and Supervisor C.O. John Doe # 1 have been aware (from lawsuits, notices of claim and complaints) that many of the DOC's officers are insufficiently trained on the proper way to protect detainees, provide medical care, to interact with detainees, and how not to act with deliberate indifference.  Commissioner Martin F. Horn, Warden John Doe # 1, and Supervisor C.O. John Doe # 1 are further aware that such improper conduct and training has often resulted in a deprivation of civil rights.  Despite such notice, Martin F. Horn, Warden John Doe # 1, and Supervisor C.O. John Doe # 1 have failed to take corrective action.   This failure caused the officers in the present case to violate the plaintiff's civil rights.

51.    Moreover, Commissioner Martin F. Horn, Warden John Doe # 1, and Supervisor C.O. John Doe # 1 were aware prior to the incident that the defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as officers. Despite such notice, Commissioner Martin F. Horn, Warden John Doe # 1, and Supervisor C.O. John Doe # 1 have retained these officers, and failed to adequately train and supervise them.

52.    At no time did plaintiff did physically assault or unlawfully resist any detainee or officer at any time during the above incidents.

53.    Plaintiff did not engage in prohibited, suspicious, unlawful or criminal activity prior to or during the above incidents.

54.    The individual defendants did not observe plaintiff engaged in prohibited, suspicious, unlawful, or criminal conduct at any time prior to or during the above incidents.

55.    At no time prior, during, or after the above incidents were the individual defendants provided with information or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiff had engaged in prohibited, suspicious, unlawful or criminal conduct.

56.    In carrying out the aforesaid unlawful acts, the individual defendants were motivated, at least, in part by maintaining their unlawful association with the gang member detainees.

57.    As a result of defendants' actions plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

## FEDERAL AND STATE CLAIMS AGAINST
## THE INDIVIDUAL DEFENDANTS

58.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

59.    The conduct of defendant officers, as described herein, amounted to excessive, unreasonable and unnecessary force, failure to protect, failure to provide medical care, conversion of chattels, retaliation for free speech, fabricated evidence, assault and battery, conspiracy, intentional and negligent infliction of emotional distress,  harassment, gross negligence, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.

60.    The conduct of the defendant officers, as described herein, violated plaintiff's rights under 42 U.S.C. §§ 1983 and 1985(3), the First, Fifth, Eighth, and Fourteenth, and Fourteenth Amendments to the United States Constitution, and New York State law, by committing amounted to excessive, unreasonable and unnecessary force, failure to protect, failure to provide medical care, conversion of chattels, retaliation for free speech, fabricated evidence, assault and battery, conspiracy, intentional and negligent infliction of emotional distress,  harassment, gross negligence, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.

61.    Defendants acted under pretense and color of state law and their individual and official capacities and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive

10

plaintiff of his rights secured by 42 U.S.C. §§ 1983 and 1985(3), the Fourth, Fifth, Sixth, and

Fourteenth Amendments to the United States Constitution and New York State law.

62.    As a direct and proximate result of the misconduct and abuse detailed

above, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion

of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation,

and financial loss.

63.    The plaintiff is also entitled to receive punitive damages because

defendants' actions were motivated by extreme recklessness and indifference to the plaintiff's

rights.

## FEDERAL AND STATE CLAIMS AGAINST DEFENDANT HORN

64.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same

were fully set forth at length herein.

65.    Defendant Commissioner Martin F. Horn is liable, in his official capacity,

to plaintiff because: (1) he created and allowed to continue a policy or custom under which

unconstitutional practices occurred, (2) he was grossly negligent in supervising subordinates who

committed the wrongful acts, and (3) he exhibited deliberate indifference to the rights of others

by failing to act on information indicating that unconstitutional acts were occurring.

66.    Upon information and belief, defendant Horn was aware from notices of

claim, lawsuits, complaints, and the DOC's own observations that the officers sued in the present

case were unfit to be police officers, and that it was highly likely that they would commit the acts

alleged in the present case.

67.    Nevertheless, defendant Horn exercised deliberate indifference by failing

to take remedial action.

11

68.    The aforesaid conduct by defendant Horn violated plaintiff's rights under 42 U.S.C. §§ 1983 and 1985(3), and the First, First, Fifth, Eighth, and Fourteenth, and Fourteenth Amendments to the United States Constitution, and New York State law, by failing to re-train the defendant subordinate officers, failing to adequately discipline the defendant subordinate officers, failing to adequately investigate prior complaints against the defendant subordinate officers either at the facilities where the incidents occurred and/or at his Headquarters located in New York, New York, creating a culture where officers are encouraged to ignore, harass, and violate individuals, and acting in a manner which amounted to negligent hiring, training, monitoring and retention of incompetent employees, in violation of state law.

69.    As a direct and proximate result of the misconduct and abuse detailed above, plaintiff experienced personal injuries, pain and suffering, fear, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

70.    The aforesaid conduct of defendant Horn amounted to negligent hiring, training, monitoring and retention of incompetent employees, in violation of state law.

## FEDERAL AND STATE CLAIMS AGAINST THE CITY OF NEW YORK

71.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

72.    The City of New York directly caused the constitutional violations suffered by plaintiff.

73.    Upon information and belief, the City of New York was aware from notices of claim, lawsuits, complaints, and from the DOC's own observations, that the officers involved in the present case were unfit to be officers, and that it was highly likely that they would commit the acts alleged in the present case.

12

74.     Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action, and allowing a policy, custom, and practice to become pervasive at its Rikers Island detention centers that allows inmate gangs to injure and violate other detainees with the approval, support, and consent of correction officers and officials.

75.     Further, the City of New York failed to properly train, re-train, supervise, discipline, monitor, and improperly utilized and retained these officers.   Moreover, the City of New York failed to adequately investigate prior complaints against the officers and created a culture where officers can ignore, harass, assault and violate individuals without consequence. Indeed, when individuals file complaints against officers, the City has a policy, custom, and practice of failing to substantiate or address the complaint, even under circumstances where the complaint is corroborated and credible, and the account given by the officer is unworthy of belief.

76.     The aforesaid conduct by the City of New York violated plaintiff's rights under 42 U.S.C. §§ 1983 and 1985(3), and the First, Fifth, Eighth, and Fourteenth, and Fourteenth Amendments to the United States Constitution.

77.     Moreover, the aforesaid conduct by the City of New York amounted to negligent hiring, training, monitoring and retention of incompetent employees, in violation of state law.

78.     Finally, under state law, the City of New York is responsible for its employees' actions under the doctrine of respondeat superior.

**WHEREFORE**, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.     Compensatory damages in an amount to be determined by a jury;

b.     Punitive damages in an amount to be determined by a jury;

c.     Costs, interest and attorney's fees; and

d.     Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:     New York, New York
          May 2, 2008

                                       MICHAEL O. HUESTON, ESQ.
                                       *Attorney for Plaintiff*
                                       350 Fifth Avenue, Suite 4810
                                       New York, New York 10118
                                       (212) 643-2900
                                       mhueston@nyc.rr.com
                                       By:

                                       _____

                                       MICHAEL O. HUESTON (MH-0931)

14